Pettit v. Black.

---

H. H. PETTIT, APPELLANT, V. JOHN BLACK, APPELLEE.

1. **Void Tax Sale:** INTEREST. When in a proper proceeding in court the sale of lands for taxes shall be declared void, the owner of such lands will be allowed a reasonable time, to be named in the decree, in which to pay such taxes, with interest at one per cent per month.

2. **Subrogation.** Where it appears that the purchaser has paid the amount bid at such *void* sale into the county treasury, and the county has retained it for a number of years, the purchaser will be subrogated to the rights of the county in the lien for said taxes and interest on the lands sold.

3. **Jurisdiction.** When an action is commenced by the owner of lands for the purpose of having a tax deed declared void, the court will, when prayed for in the answer, retain jurisdiction for the purpose of foreclosing and enforcing the lien of the defendant for the taxes and interest.

APPEAL from Cass county.

*Sam. M. Chapman,* for plaintiff.

I.  The authority for the treasurer to sell plaintiff's real estate for these years, and these whole proceedings, if we are correct in our conclusions, must be based on the sale of 1871, made in September, 1872.   Now what are the facts as disclosed by the testimony of the case?  Briefly recapitulated they are:

1. There is *no assessment* for the year 1871, and consequently no power to levy a tax.

2. There never was any attempt made by the treasurer to collect from the personal property of plaintiff for any of these delinquent taxes, although this real estate was placed upon his books in the name of plaintiff together with his return of personal property for each of the years 1869, 1870, and 1871, and was a matter of record immediately under the eye of that officer.

3. There was no advertisement of the plaintiff's real estate, such as in any event would authorize the treasurer to sell.

4. No return of lands-sold for taxes of 1871, as the law imperatively requires, was ever made by the county treasurer to the county clerk, nor was there a copy or pretended copy of such a sale filed in the treasurer's office.

5. The deeds of defendant show that the treasurer and the purchaser (both) openly disregarded the law in the sale and pretended purchase of this real estate, in the following particulars:   The land was not offered in the "smallest governmental subdivisions;" nor bid in in that manner, but on the contrary it was bid in in bulk with other and separate and distinct parcels of real estate, for a gross sum, and in support of this see certificates describing only a portion of the real estate in controversy (and all that were in the county clerk's office) which fully corroborate the deeds in this respect, showing the sale was made in total disregard of law.

6. The deeds were never executed as the law re-

quires, but were, years after the county clerk (whose duty it was to attest them) was dead, attempted to be "cured" by the defendant and a third party, and the records of the county changed and altered.

7. The tax certificates do not describe anything. The pretended descriptions contained therein are so absolutely meaningless and vague that a careful officer should have at once refused to issue a deed upon them.

II.  Is defendant entitled to a lien *in this action*, for the amount of purchase money and subsequent tax? We contend he cannot obtain such relief in this action on the following grounds:

1. There has been no assessment of plaintiff's land for the year 1871, nor has the defendant acquired any title.   In order to create a lien there must have been a tax assessed and a title acquired at a treasurer's sale. *Morril v. Taylor*, 6 Neb., 236.

2. Assuming sec. 7 of the act of June 6, 1871, to be a valid enactment, this court has held that the action to foreclose a tax lien in the nature of a mortgage foreclosure cannot be maintained until there is a failure of the title acquired by the purchaser under the law. *Peet v. O'Brien*, 5 Neb., 360.   In this case the court says: "The payment of tax money required to be made by section 104 must be construed as applying to cases in which the treasurer had authority to sell, and not to cases in which he, without any authority of law, made the sale."   If the treasurer disregards the plain letter of the law, and made no attempt, and fails to make the tax out of the delinquent's personal property, the sale is absolutely void, and the want of power to sell exists just as positively as though an assessment and levy had never been made.   *Johnson v. Hahn*, 4 Neb., 139.

*George W. Covell*, for defendant.

I.  In order that the allegation as to personal property might be of any avail to plaintiff, he should have alleged that at the time the taxes became payable on this land, and subsequently until the date of the sale thereof, he "had and owned sufficient personal property, out of which the taxes could have been made by distress and sale," which allegation so made, must have been sustained by the proofs, "and to be made available, the fact must have been specially pleaded." *Peet v. O'Brien*, 5 Neb., 362.  No such allegation was made, nor were any such facts specially pleaded, and therefore no testimony tending to show that plaintiff was the owner of any amount of personal property in the years 1869, 1870, and 1871, was admissible, and none should have been received, and such as was offered for that purpose should have been excluded by the court, on the exceptions taken by defendant.

II.  Plaintiff brings this suit to quiet title in himself, and cancel the tax deeds held by defendant on the land in controversy, without complying in any respect whatever, or offering so to do, with that provision of the statute which says:   "In no event shall a decree or judgment be rendered against the purchaser, until the claimant shall have paid over to the county treasurer, for the use of the purchaser, in case judgment be rendered against him, the amount necessary to redeem the land at that date, at the same rates as are provided by law where land is redeemed within two years from the date of sale."   Section.104, 7th subdivision, pages 932 and 933, General Statutes of Nebraska.  He suffered eight years after the taxes became delinquent, and four years after the sale, to pass without asserting any right.  During all of the eight years he paid no taxes, performed no duties which he owed to the public, suffered the defendant to pay the taxes levied from

year to year, and now, when it may be presumed the land has increased in value, he seeks the cancellation of the tax deeds, without even offering to redeem or to refund the taxes which the purchaser at the sale, and subsequently, has paid. In this attempt he cannot succeed. *Callahan v. Hurley*, 4 Central Law Journal, No. 12, for March 23d, 1877, pages 272, 273, and 274, decided in U. S. Supreme Court, at October term, 1876. See also the case of *Phelps v. Meade*, 41 Iowa, 470, and the cases therein cited. See also sec. 6, page 936, General Statutes of Nebraska, in connection with these cases. We think, therefore, that the plaintiff, on due examination of all the evidence offered by him, has utterly failed to make out his case, and that his action for quieting title and cancellation of the tax deeds, must necessarily fail.

III. But if this court should hold that this need not be done by this plaintiff in this cause, still the defendant is entitled, if the court should declare that his title acquired at the treasurer's sale had failed, to a lien on the real estate in controversy for the full amount of the purchase money, together with interest thereon from the date of such purchase, at the rate of forty per cent per annum, until the same is fully paid, and also to a lien thereon for all subsequent taxes paid by him on the same, together with interest thereon from the time of such payment at the same rate. (See section 7, act of June 6th, 1871, page 936, General Statutes.) He is entitled under this statute to the enforcement of this lien against said land in the manner of the foreclosure of mortgages. We contend that he is entitled to the foreclosure of this lien *in this action* if his title shall be declared to have failed. A court of equity, in order to avoid multiplicity of actions, has the undoubted right to permit all questions and all issues

arising in any action tried before it, to be settled in the same action, and it would be contrary to the usual course pursued by courts of equity, to deny the enforcement of this lien in this action, even though the statute may not expressly declare that it may be done in the same action. Should the defendant's title be declared to have failed, his right to an action to enforce the lien of the tax immediately thereupon accrues, and what principle of equity will prohibit him from having it enforced in the same action, in the manner directed by law for the foreclosure of mortgages? To refuse it would be to my mind clearly inequitable and unjust.

COBB, J.

H. H. Pettit sued John Black in the district court of Cass county in an action *quia timet* for the purpose of clearing off and having declared void certain tax deeds made by the treasurer of Cass county to the said John Black, conveying to him certain real estate of the said plaintiff, situate in Cass county. Plaintiff in his petition sets up the title and possession of the lands in himself; charges fraud and confederation against the defendant, the county treasurer, and others in the sale and conveyance of the lands; charges that the said sale and conveyance were void on account of certain alleged irregularities, and particularly that during all of the years 1870, 1871, and 1872, the years in which the taxes for which said lands were sold became delinquent, the said plaintiff resided on the said lands with his family, and owned and had in his possession on said real estate sufficient personal property out of which the said treasurer could have made said taxes by seizure and sale, but that said treasurer made no attempt or effort to collect said taxes out of said personal property.

The defendant by his answer denied the ownership

of plaintiff in the real estate, denied that said plaintiff was the owner or possessor of personal property out of which the said taxes could have been collected by seizure and sale; denied all confederation and illegality in said sale or conveyance, and affirmatively set up each succeeding necessary step from the listing of said lands for taxes to the recording of the treasurer's deeds; and also set up that he had paid the taxes on said lands for all subsequent years, to-wit: 1872, 3, 4, 5, and 6; and while he claimed the title to said real estate by virtue of the said sale and conveyance, he also claimed and prayed the court to decree, in case his said title to said real estate, acquired at said treasurer's sale, and the deeds made in pursuance thereof, should fail and be adjudged by the court to be invalid, that his lien for the purchase money and subsequent taxes paid on said lands, with the interest thereon at the rate of forty per centum per annum from the respective dates when paid until the same is fully paid as provided by law, be foreclosed in this cause against said land, etc.

The district court found the undivided one-third and no more of the said real estate to be in the plaintiff. That at the time the taxes for the several years, for which said premises were sold, became payable, and subsequently until the date of sale, the plaintiff owned and had in his possession on the said premises, in said county, sufficient personal property out of which the said taxes could have been made by distress and sale of personal property, but that no attempt was made, etc., and entered a decree cancelling and setting aside the said tax deeds of the defendant as to the undivided one-third part of the said premises and no more. From which decree the cause is brought to this court by appeal.

Several questions are raised by the testimony touching the title to the real estate in question, which we do

not deem it necessary to pass upon. The proof shows that the plaintiff had been in possession of said premises for a period of fifteen years next before the commencement of this suit, and the only question of general title which could be raised is between the plaintiff and his wife. While she does not join in this action as a party plaintiff, she will be presumed to have acquiesced in the same as being brought for her benefit as well as that of her husband. The title of the plaintiff is good to the whole of said real estate as against the defendant, and for the purposes of this action.

The lands were sold for the taxes of 1869, 1870, and 1871, but were sold for the taxes of all these years at the same time, to-wit: September 6, 1872; hence the sales all come under the provisions of the act of June 6, 1871 (Gen. Stat., sec. 50, p. 916). Under the provisions of that act it was the duty of the county treasurer, before advertising or selling the real estate, to have seized the personal property of the plaintiff, and made said tax out of it by sale, and his power to proceed against the land itself was dependent upon his having first exhausted a reasonable effort to find personal property, if plaintiff possessed any in the county. The proof is ample that during all the time, from the date of listing the property for the tax of 1869 to the day of sale, the plaintiff owned and had in his possession on the said premises an abundance of personal property out of which the taxes could have been made by distress and sale, and that no attempt or effort in that direction was made by the county treasurer. Following the well considered case of *Johnson v. Hahn*, 4 Neb., 139, we are obliged to hold the sale of the real estate in question void.

The defendant's answer, or the greater part of it, is in the nature of a cross bill for foreclosure of his lien upon said real estate for the money paid at the said

sale, and for subsequent taxes, claiming interest on each sum at forty per cent per annum.

The act of June 6, 1871, provides that: "Whenever the title acquired by a purchaser of real estate at treasurer's sale shall fail, the purchaser at such sale, or his heirs or assigns, shall have a lien on the real estate so purchased for the full amount of such purchase money, together with interest thereon from the date of such purchase at the rate of forty per cent per annum until the same is fully paid, and such purchaser, his heirs, or assigns, may pay all taxes lawfully assessed on such real estate after such purchase, and when the said title shall fail, may have a lien for all such taxes, together with interest thereon from the time of payment at the rate aforesaid," etc.   [Gen. Stat., Sec. (118), p. 936.]

By virtue of the assessment and levy of the taxes the county had a lien upon the land therefor; the taxes became delinquent and commenced to draw interest at the rate of one per cent per month on the first day of May of the year following that on which the said taxes were levied respectively.

The statute provides that upon the sale of such lands for such taxes at the time and in the manner, and after giving the notice provided therein, the purchaser shall receive a certificate entitling him to a deed for such lands at the expiration of two years from the date of such sale unless the same be sooner redeemed, etc., and also provides that the owner or occupants of any land sold for taxes, or any other person, may redeem the same at any time within two years after the day of such sale by paying the county treasurer, for the use of such purchaser, his heirs or assigns, the sum mentioned in his certificate, with interest thereon at the rate of forty per cent per annum from the date of purchase, together with all other taxes subsequently paid, etc. (Gen. Stat., Sec. 64, p. 922.)

It will be seen that very important consequences are attached to the proceeding called a sale. It immediately raises the rate of interest from twelve to forty per centum per annum. This is a pretty serious consequence to be wrought by the lapse of a few moments time, and the almost silent act of sale by the county treasurer. The law nowhere ascribes this consequence to the mere lapse of time; but if for any reason there is no sale, as is sometimes the case for years, the rate of interest remains one per cent per month.

In this case there is evidence that the county treasurer went through the forms of a sale of these lands, but that he did so in the absence of certain conditions precedent which, according to the decisions of this court in the case above referred to, were not only necessary to the validity of such sale, but the absence of which render such sale absolutely void. In other words, render such proceedings, no sale. The legal definition of the word *void* according to *Webster* is, "of no legal force or effect whatsoever; null and incapable of confirmation or ratification." Pettit was no party to these proceedings. To him they have no existence; to him his lands stand assessed for taxes, taxes levied upon them delinquent and drawing interest at the rate of one per cent per month.

As between John Black and the county of Cass, the case is different. The county was possessed of a lien upon the lands of Pettit for taxes; the county treasurer, acting in a capacity quite analogous to that of agent of the county, sold the lands to Black. Now while this sale was inoperative to pass even an inchoate title to the lands, yet, together with the receipt and retention of the money from Black, it was sufficient as the foundation for the ratification by the county of the sale and transfer of its lien for these taxes to him. It will be presumed that the county treasurer paid the money re-

ceived from Black into the county treasury, and that the county, having retained the same for several years, has ratified the acts of her officer in respect to the same. Black will therefore be subrogated to all the rights of the county in the premises. And while we are not called upon in this case to express any opinion as to whether he has any claims on the county for the differ-ence between twelve and forty per cent interest on the money paid by him, yet it must be obvious that no reason or principle stands in the way of Pettit redeeming his land by paying the taxes and interest thereon at the same rate as before these void proceedings.

In the case of *Peet v. O'Brien*, 5 Nebraska, 360, this court held that "the title acquired by a purchaser at tax sale might be said to fail when it should be pronounced invalid by the judgment or decree of a court of competent jurisdiction over the subject matter, and that an action to foreclose such lien cannot be maintained until the expiration of the time limited by law to redeem nor until there is a failure of the title acquired by the purchaser under the law. Until both these events occur the court has no jurisdiction in an action of foreclosure." But in this case the action having been brought by Pettit for the purpose of having the tax deeds declared null and void and the cloud which they cast on his title removed, and the court having taken jurisdiction of the case for that purpose, will, upon familiar principles of equity practice, retain it for the purpose of foreclosing and enforcing the lien on the lands for the taxes and interest and of administering full justice between the parties as to all matters embraced in or necessarily connected with the case.

The decree of the district court will be reversed and a decree entered in this court in conformity with this opinion.

DECREE ACCORDINGLY.