St. Felix v. Green.

## HENRY ST. FELIX v. GEORGE L. GREEN.

[FILED JUNE 11, 1892.]

1. **Review:** Evidence examined, and is sufficient to sustain the verdict.

2. **Pleading:** GENERAL DENIAL: EVIDENCE. Under a general denial the proof is restricted to sustaining or controverting the facts stated in the petition. If the defendant desires to prove any affirmative matter of defense he must plead it in his answer.

3. **Instructions** *held* to be warranted by the testimony.

ERROR to the district court for Douglas county. Tried below before HOPEWELL, J.

*John P. Breen,* for plaintiff in error.

*Schomp & Corson, contra.*

MAXWELL, CH. J.

This action was brought by the defendant in error to recover commissions for the sale of certain real estate in the city of Omaha. The defendant below (plaintiff in error) answered the petition by a general denial. On the trial of the cause the jury returned a verdict in favor of the defendant in error for the sum of $695.48, upon which judgment was rendered.

The first objection of the plaintiff in error is that the verdict is not sustained by the evidence.

The testimony shows that the property in dispute is situated on the corner of Twenty-seventh and Burt streets in the city of Omaha; that the plaintiff in error had purchased it in the spring of 1889, and was anxious to sell; that he placed the property in the hands of the defendant in error to sell. The plaintiff in error alleges that the property was placed in the defendant in error's hands for the

sole purpose of endeavoring to sell it to Andrew Traynor, who it was supposed desired the property, as several of his wife's relatives resided near there. On behalf of the defendant in error it is claimed that the property was placed in his hands for sale to any person; that he called upon Mr. Traynor three times, but was unable to effect a sale, although not wholly refused; that one of the conversations with Traynor in regard to the property was in the presence of Mrs. Traynor, etc. The testimony shows that some three or four weeks after the property was placed in the hands of the defendant in error, Mrs. Traynor called at his office, as she says, for the purpose of renting the property. The defendant in error was not in his office and she left a card. She was assured by the person in the office that the defendant in error would be present soon. She thereupon left the office for some time and upon returning found that the defendant in error had not arrived. While waiting for his return the plaintiff in error came in and the result was that Mrs. Traynor purchased the property subject to the approval of her husband. The plaintiff in error in his testimony in regard to this transaction is as follows:

A. Mrs. Traynor, she was sitting in the office of Mr. Green, and when I came, she said, "You are just the gentleman I want to see," she said, "about your property," she says, "about renting or buying." I says, "We will talk about buying." She said, "I have a piece of property that I own, it is my own." She says, "I will trade you that piece of property for yours." I says, "Where is your property, Mrs. Traynor?" She said, "On Pacific and Ninth, on the corner." I says, "That is the property Mr. Shanklin used to own." She said, "Yes." I says, "I am well acquainted with that property; I have been there thousands of times." I says, "That is a fine piece of property; I wish I owned it." I says, "What do you ask for that property, Mrs. Traynor?" She said, $15,000."

54

I says, "It is very cheap." I says, "If you put your property at $15,000, that property, I will put mine at $24,000, and I will come down on mine $1,000, because I think your property is cheap." Says I, "I have a mortgage on mine of $8,000 and $15,000 is $23,000 and you will have only $1,000 to give me." "Well," she said, "that is fair." She says, "I guess we will trade, but," she says, "I shall wait for my husband." Says I, "Yes, certainly."

From this testimony it seems that he estimated the property which Mrs. Traynor proposed to exchange at more than $15,000, and therefore made a corresponding reduction in the price of his property. Taking all the testimony, in our view it tends to show an employment of the defendant in error by the plaintiff in error to effect a sale of the property in question, and the jury would be warranted in finding that he was instrumental in bringing about the transfer.

2. Objection is made to the exclusion of the testimony of Calista Johnson, who, it is alleged, would have testified that she induced Mrs. Traynor to purchase the property in controversy. This testimony was properly excluded. The answer is a general denial, and under such an answer no affirmative matter of defense can be proved.

3. It is claimed that the court erred in giving the following instruction: "It is conceded and undisputed that the defendant (St. Felix) called the attention of plaintiff to Mr. Traynor as a possible purchaser of the property in question. Now if you believe from a consideration of all the evidence that the sale to Mrs. Traynor was brought about or resulted from the efforts of plaintiff and because of any negotiations on his part, with either Mrs. Traynor or her husband, had previous to the time of such sale and while the property was still in the hands of plaintiff for sale, then the plaintiff would be entitled to recover in this action, and your verdict should be for the plaintiff for the

full amount claimed, to-wit, $625, with interest at seven per cent from 29th of June, 1889, to the 1st day of this term of court, February 9, 1891." It is said that there is no evidence to warrant the court in giving the same. This is a mistake, however, as there is sufficient to submit the matter to the jury. There was no error, therefore, in giving the same. Objections of a like nature are made to the sixth instruction, but we see no error in giving the same. Upon the whole case there is no material error in the record and the judgment is

AFFIRMED.

THE other judges concur.